**BRADY DOUGLAS and ROBERTO RAMIREZ**                               **PLAINTIFFS**


**VS.**                                                        **CIVIL ACTION NO. 3:13cv271**

**CHARLES NORWOOD d/b/a NORWOOD**
**TRUCKING, NORWOOD TRUCKING, INC., NTC**
**and ROGER SHAW**                                                 **DEFENDANTS**


**ORDER**

This cause comes before the court on defendants' motion for Rule 56 summary judgment, on the grounds that this action was not timely filed. The court, having considered the memoranda and submissions of the parties, concludes that the statute of limitations defense has merit and is very likely to be sustained. However this court will hold off on formally entering a ruling in this regard until plaintiffs have been given an opportunity to submit briefing regarding certain personal jurisdiction issues which they have arguably not yet had a full opportunity to address.

This is a negligence case, based on diversity jurisdiction, involving an automobile accident that occurred in Boone County, Kentucky on November 2, 2010. In their complaint, the plaintiffs, who are Texas residents, seek recovery against defendant Roger Shaw and his employer Charles Norwood d/b/a Norwood Trucking, Inc. Shaw and Norwood are each domiciled in Mississippi, and plaintiffs allege that the negligence of both contributed to the accident which left them injured. The procedural history of this case is rather unusual, as are the legal and equitable issues which now confront the court. Plaintiffs initially filed suit in Texas

state court on August 3, 2012, which all parties agree was timely under any state's law which might be applicable here.

Subsequently, the Texas court granted Norwood's motion to dismiss for lack of personal jurisdiction. However, the Texas court only dismissed Norwood after his counsel had represented to it, in a February 2013 brief, that "[t]he dismissal and refiling of this case in Boone County, Kentucky would not work an injustice to Cross Plaintiff, as the statute of limitations has not run." After that dismissal, plaintiffs re-filed suit not in Kentucky, but in this court, asserting that Mississippi law applied and that this case was timely filed under the law of this state. Defendants responded with a motion to dismiss on statute of limitations grounds, contending that Kentucky law applied and that, contrary to their representation in the Texas briefing, that state's statute of limitations had, in fact, run.

In an August, 2014 order, this court dismissed defendants' motion to dismiss without prejudice, pending a determination of whether they should be precluded, on equitable or legal grounds, from raising a statute of limitations defense in this case. In that order, this court set forth its initial impressions of this case, including its concerns regarding the fairness of allowing defendants to raise a statute of limitations defense, in light of their representations in the Texas litigation. After setting forth its tentative impressions of this case in its initial order, this court requested that the parties provide briefing and conduct any needed discovery in response to that order. The parties have now done so, and the court finds that briefing sufficient to resolve most, but not all, of the outstanding issues in this case. The procedural history of this case (and this court's order today) is somewhat complex, and it will therefore divide discussion of the issues herein into multiple sections which address the relevant issues.

2

**I.  Does defendants' statute of limitations defense have merit, assuming they
are allowed to raise it?**

The first, and most straight-forward, issue for this court's resolution is that of whether defendants' statute of limitations defense has merit, if they are not precluded from raising it.  In its initial order, this court concluded that defendants' limitations defense was likely a meritorious one, and nothing in the parties' subsequent briefing has altered its conclusion in this regard.  In its prior order, this court initially found that Kentucky law applied to the claims arising from the auto accident in this case.  In so concluding, this court noted that an automobile accident occurring in a particular state is a fairly prototypical example of a case in which the law of that state should be applied, and plaintiffs have submitted no authority suggesting otherwise. Plaintiffs have likewise not attempted to flesh out their highly conclusory assertions that the Kentucky accident was the result of negligent supervision or training which occurred in Mississippi.  This assertion strikes this court as being a highly suspect one, and implausible allegations such as this one require more than conclusory allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  It appears to this court that plaintiffs included the allegations of negligent supervision or training in Mississippi to give their lawsuit a greater Mississippi "flavor," but they have provided this court with no indication that there is any real substance to these claims.  The court therefore reiterates its view that Kentucky's statute of limitations applies in this case.

In its initial order, this court found that Kentucky's two-year statute of limitations had run on November 2, 2012, barring tolling of the limitations period based on the filing of the Texas lawsuit.  This court further found that, according to its research, Kentucky law provided

for no such tolling on the basis of claims which were filed, but later dismissed, in courts outside of Kentucky. *See Blair v. Peabody Coal Co.*, 909 S.W.2d 337 (Ky. App. 1995)(finding that where a party filed in another state and the action was dismissed for lack of jurisdiction, the savings statute did not toll the limitation period.) Plaintiffs have submitted no arguments which might cause this court to reconsider its views in this regard.

Plaintiffs have submitted arguments in their revised briefing that Mississippi's savings statute, set forth in Miss. Code Ann. § 15–1–69, applies in this case, but they merely repeat their earlier arguments on this issue and do not address this court's prior rejection of them. Specifically, this court wrote in its prior order that:

> This court's research further indicates that while Mississippi has its own savings statute, the Mississippi Court of Appeals has held that, like the Kentucky statute, it does not apply to suits which were filed and dismissed in other states. *See S & H Grocery Inc. v. Gilbert Const. Co.*, 733 So. 2d 851 (Miss. App. 1998), interpreting Miss. Code Ann. § 15–1–69. This is significant, since it considerably weakens plaintiffs' argument that the application of Kentucky's statute of limitations would run counter to the public policy of this state.

In renewing their argument that they should be allowed to claim the protection of § 15–1–69, plaintiffs do not even attempt to address the Mississippi Court of Appeals' decision in *S & H Grocery*, which, once again, found the savings statute inapplicable to suits which were filed and dismissed in other states. Plaintiffs rely upon *Stockstill v. State*, 854 So. 2d 1017, 1029 (Miss. 2003) and *Crawford v. Morris Transportation, Inc.*, 990 So. 2d 162, 174 (Miss. 2008) in support of their tolling arguments, but both of these decisions involved cases which were initially filed and dismissed in Mississippi, not in other states, and are thus inapplicable here. This court therefore reiterates its view that Mississippi's savings statute is inapplicable in this case.

In their renewed briefing, plaintiffs have likewise failed to contest this court's conclusion

that Miss. Code Ann. § 15–1–65 strongly suggests that the Mississippi Legislature did not intend for courts in this state to become a refuge for actions which are time-barred elsewhere, as plaintiffs are clearly seeking here. In expressing its views in this regard, this court observed that:

> Defendants' legal position in this context is rendered even stronger by the existence of another Mississippi statute which provides that where a cause of action which "accrued" in another state is time-barred in that state, a non-resident may not bring suit in this state based on that cause of action. Specifically, § 15–1–65 provides that:
>
> > When a cause of action has accrued outside of this state, and by the laws of the place outside this state where such cause of action accrued, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state; provided, however, that where such a cause of action has accrued in favor of a resident of this state, this state's law on the period of limitation shall apply.
>
> The evident purpose of this statute is to prevent Mississippi courts from becoming a "haven" for actions which are time-barred in other jurisdictions, and it strikes the court as being supported by significant public policy considerations. In light of the foregoing, the court is inclined to agree with defendants that Kentucky law applies and that the law of that state would deem the present action to be time-barred.

In the court's view, plaintiffs' argument that applying Kentucky's savings statute in this case would be contrary to Mississippi public policy makes little sense in light of the facts that 1) the law of the two states is so similar in this context and 2) § 15–1–65 appears to specifically bar non-Mississippi plaintiffs from filing actions in Mississippi which are time-barred in other states.

In light of the foregoing, the court explicitly finds what it previously suggested: that claims arising from the accident in this case would be time-barred under applicable Kentucky law, assuming that defendants are allowed to raise that limitations defense.

## II. Was personal jurisdiction over Norwood lacking in Texas, and, if so, what is the implication of such for this case?

While this court has not altered its views regarding the statute of limitations issues in this case, it has reconsidered, to some degree, its previously-stated views regarding the equities of allowing defendants to raise this defense. The court has done so partly (but, as discussed below, certainly not completely) on the basis of additional research which it has performed regarding the jurisdictional issues which confronted the Texas court which dismissed this action for lack of personal jurisdiction. As explained below, it now appears to this court that personal jurisdiction over Norwood was so clearly lacking in Texas that plaintiffs should appropriately bear a much greater degree of responsibility for filing suit against him there than this court had initially assigned to them. Plaintiffs' choice to sue Norwood in Texas was theirs alone, and, if they had filed suit in Kentucky or Mississippi instead, they would likely have had no difficulties with either personal jurisdiction or statute of limitations issues. By the same token, it now appears to this court that it is unlikely that defendants' representations to the Texas court regarding the running of the Kentucky statute of limitations were the proximate cause of the dismissal of that action, since the law clearly called for this result regardless.

Having said that, the court finds its analysis of the personal jurisdiction issues in this case to be subject to unique procedural concerns, since its views on these issues have changed somewhat since its initial order. In its initial order, the court expressed the following tentative views on the subject of personal jurisdiction:

> Based on the limited exhibits provided to this court, it appears that the Texas court simply ruled without explanation that Norwood's "special appearance should be sustained" and that Ramirez's claims against Norwood were "dismissed for lack of personal jurisdiction." Given the lack of explanation in its order, it is unclear to this court whether the Texas court felt that the jurisdictional issues were completely clear or whether they might have presented a "close call" as to which plaintiff's ability to re-file suit might have been deemed a relevant consideration. This court has reviewed Norwood's Texas motion, and it appears

to be a rather bare-bones affair.  In particular, the motion merely asserts that Norwood has "never maintained a place of business in Texas or a residence in Texas" with no further recitation of the extent of his contacts with that state.  This strikes the court as being a very selective recitation of facts for an individual who is the principal of a trucking company which, one would presume, regularly sends its eighteen-wheel trucks over the highways of Texas.  If such is not the case, then Norwood did not so indicate in his motion.  The court further notes that Norwood's motion merely argued that *specific* jurisdiction was inapplicable, and this seems clear enough, considering that the claims arising from the Kentucky automobile accident did not arise from any contacts Norwood may have had with Texas.  *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,* 517 F.3d 235, 241 (5th Cir. 2008).

Norwood's brief did not address the issue of whether general jurisdiction existed under *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408 (1984).  It is well settled that where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant, even if a particular cause of action did not arise out of the defendant's in-state activities.  *Luv N' Care Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 414).  Establishing general jurisdiction is quite difficult, and the Texas court may well have reached the same result even if given a full picture of Norwood's contacts with Texas.  Regardless, Norwood's brief on this issue is vague enough that this court cannot conclude, based upon the limited evidence before it, that his representation that plaintiff could refile his suit elsewhere did not play a role in the Texas court's ruling.  Presumably, Norwood would not have represented that Ramirez's action could be refiled after dismissal if it did not believe it would have an impact on the Texas court's ruling.   It is not clear to this court why he should receive the benefit of the doubt in this regard, since he is the one who made false representations to the Texas court in the first place.

[Slip op. at 5-6].

This court also made the following remark in footnote 4 of its order:

The court would hasten to add that it has no intention of relitigating the issue of whether personal jurisdiction existed over Norwood in Texas.  Indeed, it likely lacks the authority to do so even if it wanted to.  Suffice it to say, however, that the court would be more willing to grant Norwood the relief he seeks if his briefing before the Texas court more clearly established that personal jurisdiction over him was lacking.

This court's additional research into jurisdictional issues in this case necessarily leads it to revise

its earlier impression that the personal jurisdiction issues before the Texas court were potentially close ones.

This court's additional research persuades it that plaintiffs should have known at the time they chose to sue Norwood in Texas that personal jurisdiction over him was lacking in that state, and this conclusion greatly weakens their equitable standing in this court's eyes. Simply stated, there is only so much equitable mileage which plaintiffs can get out of an argument that Norwood's false representations to the Texas court deprived them of the windfall of a legally incorrect ruling in their favor. It now appears to this court that the jurisdictional law was so clearly on Norwood's side, that if his Texas attorney had simply filed a motion to dismiss for lack of personal jurisdiction, citing the correct doctrines and authorities, then it would have inevitably been granted on its merits, and plaintiffs would have no equitable argument to make in this case. Considered in this light, the deficiencies in defendants' briefing in the Texas case can properly be regarded as a windfall for plaintiffs which have given them "something to argue" before this court. Stated differently, it is now apparent to this court that plaintiffs obtained in the Texas court the result which they had every legal right to expect when they filed it: Norwood's dismissal for lack of personal jurisdiction. This court's conclusion in this regard, in light of subsequent jurisdictional research, has led it to view the equitable issues in this case in a new light.

In response, plaintiffs may argue that this court should only consider the arguments actually made by Norwood in the Texas case in assessing the jurisdictional issues in this case. While this argument has a superficial appeal, it misapprehends the nature of the court's present inquiry. This court is not sitting in appellate review of the Texas court's ruling (indeed, it agrees

with that ruling), but is, rather, assessing the equitable implications of what transpired in the Texas litigation. Specifically, this court is seeking to determine whether Norwood's false representation in his Texas briefing should equitably bar defendants from raising a statute of limitations defense in this case. As such, considerations of equity in this context should not, in the court's view, be limited to the arguments which Norwood actually made before the Texas court, since, once again, this court's role is not as an appellate court of errors.

Plaintiffs are asking this court to take the extraordinary step of preventing defendants from raising a meritorious statute of limitations defense in this case. This court would be much less inclined to take this extraordinary step if it concluded that, whatever the deficiencies in the defendants' briefing in the Texas case, plaintiffs themselves should have known that personal jurisdiction over Norwood was lacking when they chose to file suit against him in Texas. Moreover, the doctrines of judicial and equitable estoppel are partly designed to protect the integrity of the judicial process, and this court would have fewer concerns in this regard if it concluded that the Texas proceedings produced the correct legal result.

In fairness to plaintiffs, however, this court will, at this juncture, merely state its tentative conclusions on the issue of personal jurisdiction, and they will be given an opportunity to submit briefing and, if necessary, conduct discovery on this issue prior to a final ruling from this court. This strikes this court as being the fairest approach, since its prior order did tend to discourage inquiry into the personal jurisdiction issue. However, the court emphasizes that, except for the issue of personal jurisdiction (and conclusions based on its findings in that context), its order today, including its finding that the statute of limitations defense is meritorious, constitutes a formal ruling which may only be challenged under the standards applicable to motions to

reconsider (*i.e.* plaintiffs may not submit new arguments on such issues). With this caveat, the court will proceed to a discussion of the personal jurisdiction case law in this context.

It seems clear that, in suing Norwood in Texas over an accident which occurred in Kentucky, plaintiffs must rely upon the doctrine of general, rather than specific, personal jurisdiction. In describing the legal distinction in this context, the Fifth Circuit has written that:

> Personal jurisdiction may be "specific" or "general." For specific personal jurisdiction, a plaintiff makes a *prima facie* showing of minimum contacts when his claim arises from the defendant's contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. t. 1868, 80 L. Ed. 2d 404 (1984). For general personal jurisdiction, a plaintiff makes the requisite showing when that defendant's contacts are "continuous and systematic," so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

*Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).[1]

It is evident that general personal jurisdiction is a much more limited doctrine than specific personal jurisdiction, and, the "systematic and continuous" standard used to determine whether general jurisdiction exists is a quite stringent one. In *Palermo*, for example, the Fifth Circuit rejected in short order the notion that general jurisdiction may have existed in Texas over a Louisiana law firm organized as a limited liability partnership.[2] The plaintiffs argued that the

---

[1]This court notes that the U.S. Supreme Court recently provided a highly restrictive interpretation of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). Given that *Daimler* was decided after the relevant state court proceedings in Texas, however, this court will refrain from discussing it and limit its analysis to authority existing at the time. It is arguable that *Daimler* should be applicable in this case, since the decision relied upon authority dating back to *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), but this court will give plaintiffs the benefit of the doubt in this regard. At any rate, it seems clear enough even from the pre-*Daimler* case law that general personal jurisdiction was lacking over Norwood in Texas.

[2]While much of the limited Supreme Court and Fifth Circuit authority in this context involves businesses organized as corporations, *Palermo* demonstrates that the Fifth Circuit has applied

fact that the law firm conducted business with a Texas client over a period of several years suffced to establish general jurisdiction over the firm, *Palermo*, 723 F.3d at 560, but the Fifth Circuit disagreed, writing that:

> The general-personal-jurisdiction theory has no substance under these facts. Defendants maintained no offices in Texas; they had no personnel stationed there; they paid no Texas taxes and had no registered agent for service of process; and, although sustained over an appreciable period, transacted only limited and discrete business there.

*Id.*

Since this court's initial order, it has conducted additional research which has revealed authorities suggesting that the issue of whether general personal jurisdiction existed over Norwood in Texas is clearer than it had originally thought.  In *Holden v. Bah Exp., Inc.*, 2013 WL 6199229, at *1 (M.D. La. Nov. 27, 2013), for example, Louisiana District Judge Shelly Dick concluded that general jurisdiction was lacking in a case bearing very significant similarities to the instant case.  *Holden* involved claims by a Louisiana plaintiff against a Georgia trucking company arising out of a vehicular accident which occurred in Georgia.  The plaintiff sued the trucking company in the plaintiff's home state of Louisiana, alleging that general personal jurisdiction existed, partly on the basis of a "satellite location" which the business maintained in Louisiana.  *Holden*, 2013 WL 6199229, at *3.  Judge Dick rejected this argument, writing that:

> The uncontroverted facts suggest that, at a minimum, the very existence of the New Orleans satellite location indicates that BAH operates trucks which travel

---

similarly stringent standards to non-corporate entities.  This is unsurprising, since there would be little sense in applying wildly varying due process standards to businesses depending on whether they chose to organize themselves as corporations or as some other business entity.  Indeed, while the holding in *Daimler* was written in terms of corporations, the defendant in that case, Mercedes–Benz USA, LLC, was actually a Delaware limited liability company.  *Daimler*, 134 S. Ct. at 748.

through Louisiana, destined for locations either inside or outside of the State. Mere operation of a foreign-based interstate trucking company which is known to utilize the roadways of a particular forum, without more, can hardly create "affiliations with the State ... so 'continuous and systematic' as to render [the company] essentially at home in the forum State." Accordingly, this Court has no personal jurisdiction over BAH.

*Id.*

In this case, it appears that Norwood had even fewer contacts with Texas than the defendant in *Holden* had with Louisiana. Indeed, at the time he dismissed this action, the Texas court had before it an affidavit from Charles Norwood stating in pertinent part that:

> My name is Charles Norwood. . . I am the owner of Norwood Trucking. As the owner of Norwood Trucking. . . Norwood Trucking's principal and only officer is located in Water Valley, Mississippi. Norwood Trucking does not maintain a place of business in Texas. Norwood Trucking is not a Texas company. Norwood Trucking does not have customers located in the State of Texas. I have never lived in the State of Texas. I live in Mississippi. At the time of the accident made the basis of plaintiff's lawsuit, the driver [Robert Shaw] who was hauling a load for Norwood Trucking did not reside in Texas. Roger Shaw lives in Mississippi. The accident made the basis of plaintiff's lawsuit occurred in Boone County, Kentucky.

Thus, in this case, Norwood filed a sworn affidavit which, as best this court can discern, leaves no room for a finding that he had "systematic and continuous" contacts with Texas. Unlike the company in *Holden*, Norwood apparently lacked even a satellite office in Texas; in fact he denied that he even had customers located in that state.

Moreover, after careful consideration, the court agrees with Judge Dick that "[m]ere operation of a foreign-based interstate trucking company which is known to utilize the roadways of a particular forum, without more, can hardly create 'affiliations with the State ... so "continuous and systematic" as to render [the company] essentially at home in the forum State.' " *Id.* This holding is consistent with the stringent nature of the "continuous and systematic"

standard. The word "continuous" strikes this court as being consistent with some sort of permanent physical presence in a state, and it agrees with Judge Dick that even the regular dispatching of trucks onto the roads of a particular state would not suffice in this regard. Indeed, even a brief period in which a company's trucks were *not* present in a state would appear to render the company's contacts with that state less than "continuous." Moreover, the word "systematic" implies something more than a solitary truck traversing the roads of a state at a particular time; some more significant degree of contact is clearly implied.

This court's conclusion in this regard is strengthened by the Fifth Circuit's description in *Palermo* of the sort of contacts which might suffice to establish general jurisdiction. To reiterate, the Fifth Circuit emphasized that "[d]efendants maintained no offices in Texas; they had no personnel stationed there" and that they "had no registered agent for service of process" in that state. *Id.* These examples all involve a sustained presence in the state, and it seems clear that only such a presence could render a defendant's contacts with a state both "systematic" and "continuous." In the court's view, a holding to the contrary would raise serious due process concerns as to regional or national trucking companies, since it is simply unavoidable that such business will be required to utilize the highways of various states. General jurisdiction is clearly intended to be a quite limited doctrine, and applying the doctrine to such companies in this context would contravene this fact.

This court also notes that, in his affidavit, Norwood denied even having customers in Texas, a fact which appears to make this case an even clearer one than *Palermo* and *Holden*. As noted previously, *Palermo* involved a law firm which admittedly had a long relationship with a Texas client, and Judge Dick found general jurisdiction lacking in *Holden* in spite of the

presence of a satellite location which had been made available to the defendant trucking company by one of its customers. *Holden*, 2013 WL 6199229, at *3.

In light of the foregoing, this court is rather strongly inclined to conclude that general jurisdiction over Norwood was clearly lacking in Texas and that this fact should substantially impact its analysis of the equitable issues in this case. The court hastens to add, however, that plaintiffs will be given an opportunity to conduct expedited discovery on the jurisdictional issue, if they wish to do so. If that discovery should reveal that Norwood provided a misleading picture of the nature of his business contacts with Texas in his affidavit, then this court will re-evaluate its conclusions in this regard. It is also possible that this court has not properly interpreted the law in this context, even though the stringent nature of the "continuous and systematic" general jurisdiction standard seems clear enough. With this caveat, the court will proceed to a discussion of the specific equitable doctrines which it finds to be relevant in determining whether defendants should be allowed to raise a statute of limitations defense in this case.

### III. Should defendant be barred, on grounds of equity, from raising the statute of limitations defense in this case?

The court now turns to the heart of the equitable issues in this case, which require it to consider whether defendants should be equitably barred from asserting the statute of limitations defense which this court has already found to be a meritorious one. In resolving this issue, this court must first determine which equitable doctrines are relevant in this case. Defendants argue, and the court agrees, that it should base its ruling on the specific equitable doctrines which have

been fashioned by the courts to deal with issues such as the ones here. It appears to this court that the two such doctrines which come closest to being applicable here are those of judicial estoppel and, to a lesser degree, equitable estoppel.

In this court's initial order, it asked the parties to research and brief the applicability of these two doctrines, but also the issue of whether it had the "inherent judicial authority to preclude a certain defense from being raised in order to protect the integrity of the judicial process." This court's evolving views regarding this case have significantly reduced the importance of the latter issue, since it now believes that the result reached in the Texas state court was clearly correct and that the errors made by Norwood in his briefing were inadvertent. Accordingly, this court does not believe that the integrity of the judicial process would be damaged by allowing defendants to raise a statute of limitations defense in this case. The court notes parenthetically, however, that in several pages of discussing cases upholding the inherent judicial authority of courts in this regard, plaintiffs merely confirm how different those cases are from the instant one.

While there appear to be few clear parameters to this court's inherent power in this regard, the Fifth Circuit has observed that while "federal courts possess wide-ranging implicit authority . . . the inherent power springs from the well of necessity, and sparingly so." *Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, 2013 WL 2489928, at *6 (5th Cir. 2013)(citations omitted). This court interprets this "necessity" requirement to mean that resorting to its inherent judicial power should be reserved for cases in which there is no specific judicial doctrine designed to deal with a particular situation or where a manifest injustice would otherwise result. Such is not the case here. In this case, the court finds that there are, in fact, judicial doctrines

designed to deal with situations such as the one here, and these doctrines appear to be adequate to the needs of this case.

The parties' revised briefing on this issue leads this court to believe that the doctrine of judicial estoppel is the one which comes closest to being applicable in this case, and it will therefore discuss this doctrine first.

### Judicial estoppel

In describing the judicial estoppel doctrine, the Fifth Circuit has written that:

> The doctrine of judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position," *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988), particularly in situations where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (internal citation omitted). We have previously emphasized that judicial estoppel is "intended to protect the judicial system[ ] rather than the litigants[.]" *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999). (emphasis in original). As such, it serves the "clear and undisputed jurisprudential purpose" of "protect[ing] the integrity of the courts." *Id.* at 205 n. 2 (citation omitted).

*Wells Fargo Bank, N.A. v. Titus Chinedu Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012). Courts in the Fifth Circuit generally consider three criteria when evaluating a defense of judicial estoppel, including whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is "plainly inconsistent" with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and (3) the party to be estopped has not acted inadvertently. *Id.*

Based on the aforementioned standard, this court concludes that the doctrine of judicial estoppel is inapplicable in this case. As quoted above, the Fifth Circuit has observed that judicial estoppel is particularly applicable in cases where "intentional self-contradiction is being

used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."
*Kane*, 535 F.3d at 385.  In this case, by contrast, the record supports a conclusion that briefing
errors made by counsel for Norwood in the Texas case involved inadvertent mis-statements of
law, rather than an intentional effort to deceive either the court or plaintiffs.

In so concluding, the court initially notes that there was simply no need for counsel to
mis-represent the law or the implications of any dismissal in order to obtain a favorable ruling on
the issue of personal jurisdiction.  If the issue of personal jurisdiction over Norwood in the Texas
litigation can be analogized to a game of "Texas Hold 'Em," then it seems clear that he was
holding "Pocket Aces."  That being the case, it was completely unnecessary for Norwood to
deceive the Texas court or make disingenuous representations in order to obtain a favorable
ruling on the issue of personal jurisdiction.

There are a number of other factors which support a conclusion that erroneous statements
in Norwood's Texas briefing were merely inadvertent.   First, the representation at issue in this
case was first set forth in a special appearance filed by Norwood on August 31, 2012, in which
he sought dismissal for lack of personal jurisdiction.  In the context of making an alternative
argument for *forum non conveniens*, counsel for Norwood represented that "[t]he dismissal and
refiling of this case in Boone County, Kentucky would not work an injustice to the Plaintiff, as
the statute of limitations has not run."  Defendants note that this August, 2012 brief was written
"one year, nine months and twenty eight days after collision and plainly within the two year
Kentucky limitations period."  Thus, the representation at issue was accurate the first time it was
made, and the fact that the same representation was incorporated into briefing filed in February,
2013 seems consistent with an attorney who is merely "cutting and pasting" old briefing into

new briefing. While this court does not excuse such briefing practices, they are not consistent with the sort of intent to deceive which would make resort to the doctrine of judicial estoppel most appropriate.

It appears that counsel for Norwood may well have assumed that some sort of tolling applied under Kentucky law based upon the filing of the Texas action. Indeed, this court's research suggests that a number of states would, in fact, recognize tolling in this context, *see S & H Grocery*, 733 So. 2d at 853, but, unfortunately for plaintiffs, Kentucky is not one of them. Norwood's counsel could only have known that plaintiffs' claims would be time-barred in Kentucky if he had researched the issue and discovered that the Kentucky Court of Appeals' 1995 decision in *Blair v. Peabody Coal Co.*, 909 S.W.2d 337 (Ky. Ct. App. 1995) held that no tolling of the statute of limitations existed on the basis of claims filed outside of that state (as it does for claims filed in Kentucky). This court finds the notion that counsel for Norwood was aware of the *Blair* decision to be unlikely at best, particularly since he did not even mention the term "general jurisdiction" at all in his briefing, thus suggesting that he did not perform a great deal of research prior to filing his brief.

The court also notes that Norwood made his false representation regarding the running of the statute of limitations in the section of his brief setting forth his alternative arguments for the application of *forum non conviens*. In this vein, defendants emphasize that Texas law required the court to take up the personal jurisdiction arguments first,[3] and a dismissal of the case for lack

---

[3]*See,* Tex. R. Civ. P. 120a(2) ("Any motion to challenge the jurisdiction provided for herein shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard."); *see also First Oil PLC v. ATP Oil & Gas Corp.*, 264 S.W.3d 767, 776 (Tex. App - Houston 2008) (discussing Rule 120a's due order- of-pleadings and due-order-of-hearing requirements).

of jurisdiction was clearly a preferable result for Norwood. That being the case, it seems likely that, if counsel for Norwood was attempting to mislead the court, he would have included his false representation in the jurisdictional section of his brief.

In light of the foregoing, any hypothetical conspiracy on the part of counsel for Norwood to deceive the court through the representation in question seems extremely unlikely based upon the record in this case. A far more likely explanation is that the representation in question reflected simple inadvertence, and, as noted previously, the doctrine of judicial estoppel requires a showing that the "party to be estopped has not acted inadvertently." This requirement is not met in this case.

Similarly inapplicable is the judicial estoppel doctrine's requirement that "the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled." In granting Norwood's motion to dismiss as to Douglas' claims, the Texas court simply wrote in an April 17, 2013 order that "[h]aving considered the special appearance and affidavits, the response, plaintiff's original petition and arguments of counsel, this Court is of the opinion that said Special Appearance should be sustained." The Texas court used similar language in a June 19, 2013 order with regard to Ramirez's claims against Norwood. Thus, the Texas court's orders shed very little light on what specific arguments might have motivated its decision. Once again, however, Texas law required the court to take up the personal jurisdiction arguments first, and, to reiterate, the representation at issue in this case was set forth in the *forum non conviens* section of their brief. That being the case, it seems more likely than not that the Texas court based its ruling on the arguments relevant to the jurisdictional issue it was deciding.

In their latest briefing, the parties have submitted proof regarding arguments which were

made before the Texas court at an informal hearing in chambers which preceded its ruling. Unfortunately, their submissions have shed little, if any, light in this regard. For example, Norwood's Texas counsel has submitted an affidavit asserting that counsel for plaintiffs outright conceded the issue of personal jurisdiction before the Texas court, but counsel for plaintiffs denies this assertion. Counsel for plaintiffs makes his own allegations regarding verbal representations made by counsel for Norwood which have likewise been denied. Plaintiffs have submitted an affidavit from their Texas counsel that, in that hearing, counsel for Norwood made the same representation regarding dismissal not working an injustice upon plaintiffs as he made in his briefing. Even assuming this is true, however, this court finds the parties' proof in this regard to be far less relevant than actual statements from the Texas court would have been.

It would be pure speculation for this court to attempt to decipher from the parties' contradictory proof exactly what motivated the Texas court's decision, and this court declines to so speculate. Ultimately, however, the issue of what arguments were made to the Texas court, either in the form of briefing or verbal statements, would be much more relevant if the legal issue at hand were a close one. This court's initial impression was that the issue of whether personal jurisdiction over Norwood existed in Texas was at least potentially a close one, but, for the reasons stated previously, it no longer believes that to be the case. Accordingly, this court is left with a ruling in which the Texas court found, without elaboration, that it lacked personal jurisdiction over Norwood, and the court finds this to have clearly been the result called for by the law.

In light of the foregoing, this court concludes that the Texas court found that it lacked personal jurisdiction over Norwood because it did, in fact, lack personal jurisdiction over

Norwood.  If the legal issues in this context were closer, then this court might be more willing to give plaintiffs the benefit of the doubt regarding the effect of the representation in Norwood's brief upon the Texas court's ruling.  Given that the law seems so clear, however, this court is unwilling to assume that the Texas court was merely a blank judicial slate acting solely upon the arguments of parties, with no independent legal knowledge of its own.  Indeed, this court itself recognized that general jurisdiction was applicable in this case, even though Norwood did not brief the issue, and it has since conducted its own independent research into U.S. Supreme Court authority in this context.  This court has no reason to suspect that the Texas court did not or would not have done the same.  In light of the foregoing, the court concludes that two of the three requisites for the doctrine of judicial estoppel are not met in this case.

The court notes at this juncture that it initially assumed that the first requirement of judicial estoppel, namely that "the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case," would be met in this case.  Upon further reflection, however, it far from clear that such is the case.  As noted previously, Norwood represented in his February 2013 brief that "[t]he dismissal and refiling of this case in Boone County, Kentucky would not work an injustice to Cross Plaintiff, as the statute of limitations has not run."  While this statement was clearly incorrect, it only refers to the time period when it was made, i.e. February, 2013.  Moreover, the statement refers to the re-filing of the case in Kentucky.  These facts are significant for a number of reasons.

In the court's view, Norwood's representation is not "plainly inconsistent" with a statute of limitations defense being asserted in this case, since 1) the instant lawsuit was filed on October 30, 2013, and the limitations period may have run in the intervening months; and 2) this

case was not filed in Boone County, Kentucky, but rather in federal court in Mississippi. Moreover, even as to the Texas court's ruling of dismissal, the dated nature of the statement hurts plaintiffs' argument that the Texas court relied upon it in making its ruling. Presumably, if the Texas court was interested in statute of limitations issues, then it would have made inquiry into exactly when the limitations period would run, since Norwood's brief asserted no facts in that regard. It is unclear why the Texas court would have been interested in limitations issues, since they were not relevant to the jurisdictional issue it was required to consider first. Nevertheless, if the Texas court were so interested, then it would have been required to conduct its own inquiry in order to obtain a complete picture in this regard. These considerations do not, in the court's view, completely negate plaintiffs' equitable position in this case, but they do tend to harm it significantly. Thus, although this court's evaluation of the equities of allowing defendants to raise a statute of limitations defense is based partly on its reconsideration of personal jurisdiction issues, it is also based on a closer examination of the specific equitable doctrines themselves.

While the court has addressed the specific requirements of the judicial estoppel doctrine, it wishes to emphasize that the doctrine is an equitable one which grants considerable discretion to this court regarding its application. In this vein, the court returns to its previously-stated conclusion that, from an equitable standpoint, it is quite significant that the correct legal result was reached by the Texas court. That being the case, it appears that plaintiffs can only legitimately argue that they were, at most, deprived of the windfall of an erroneous ruling in their favor. This is simply not a strong equitable position to advance. Moreover, it appears that any victory by plaintiffs on the personal jurisdiction issue would have been a highly tenuous one

subject to reversal on appeal. Plaintiffs seek to cast blame upon Norwood's Texas counsel for their current legal predicament, but it was not that counsel who led them to sue Norwood in a jurisdiction which lacked general personal jurisdiction over him. That decision was plaintiffs' alone, and it strikes this court that the end result, i.e. Norwood's dismissal, was essentially inevitable. For this and the other reasons stated above, the court concludes that the doctrine of judicial estoppel is inapplicable in this case.

This court will take this opportunity to briefly address plaintiffs' argument that the false representation made by counsel for Norwood constituted a judicial admission which should bind defendants in this subsequent action. In so arguing, it appears that plaintiffs are seeking to force the judicial admission doctrine to carry a much heavier burden than it was designed to bear. In describing this doctrine, plaintiffs cite Fifth Circuit authority for the proposition that:

> "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not, itself, evidence, it has the effect of withdrawing it from contention." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). "[F]actual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987).

This court has reviewed these three Fifth Circuit decisions, and they each involved admissions made, and sought to be used, in the same lawsuit. In this court's experience, judicial admissions have always been used in this manner, often as a judicial housekeeping tool of sorts, such as to bind parties to facts agreed to in the pre-trial order. Defendants argue that the doctrine applies only to assertions of fact, not law, and this court tends to agree that the representation that the statute of limitations had not run is better regarded as one of law. Even assuming that the

representation can be regarded as a statement of fact, however, this does not mean that it is necessarily binding in a subsequent lawsuit.

In support of their argument that the judicial admission doctrine extends this far, plaintiffs rely upon a Texas state court decision which is of no apparent precedential value in this court. Specifically, plaintiffs cite a Texas state appellate court's decision in *Dow Elanco v. Benitez,* 4 S.W.3d 866 (Tex. App. - Corpus Christi 1999) for its holding that:

> Pleadings in another case that are inconsistent with a party's position in a present action are quasi-admissions, but are generally not conclusive. However, a quasi-admission is treated as a judicial admission when it appears: (1) the declaration was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the declarant's theory of recovery or defense; (3) the statement is clear and deliberate, and not a mistake; (4) giving conclusive effect to the admission will not be contrary to the public policy on which the rule is based; and (5) the statement is not destructive of the offering party's theory of recovery.

*Dow Elanco*, 4 S.W.3d at 871 (citations omitted). This law is simply not binding authority in the case at bar, but, even if it were, its third requirement is not met, since this court has already concluded that the false representation made by Norwood's counsel was inadvertent and not a deliberate intent to deceive either the Texas court or plaintiffs.

At any rate, the court concludes that judicial estoppel, and not judicial admission, is the relevant doctrine in this case. This fact seems clear enough from the Fifth Circuit's previously-quoted statement that "[c]ourts in the Fifth Circuit generally consider three criteria when evaluating a defense of judicial estoppel, including whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case." *Wells Fargo Bank, N.A.*, 698 F.3d at 235 (emphasis added). Thus, judicial estoppel is the doctrine designed to address cases where a statement by an opposing

party is sought to be used against it in another case, and the court concludes the equitable issues in this case should be analyzed under that doctrine. While it may be the case that the doctrine of judicial admission has occasionally been used in this context, it does not appear to be designed for such.

The court therefore concludes that plaintiffs' judicial admission arguments are inapplicable, and, even if considered on their merits, of no assistance to them in this case. In so concluding, the court emphasizes that, as stated previously, Norwood merely represented in his February 2013 brief that "[t]he dismissal and refiling of this case in Boone County, Kentucky would not work an injustice to Cross Plaintiff, as the statute of limitations has not run." Thus, even if this court were to find the doctrine of judicial admission somehow applicable in this case (which it is not), then this would merely constitute a binding admission that the statute of limitations had not run in February 2013. This would not resolve the issue of whether the instant case was timely filed on October 30, 2013. This court therefore regards the issue of judicial admission to be something of a red herring in this case, and it finds plaintiffs' reliance on this doctrine to not be well taken.


**Equitable estoppel**


The court now turns to the parties' arguments regarding the doctrine of equitable estoppel. Equitable estoppel is concerned not with representations made to a court, but rather with the reasonable reliance of a party upon representations of fact made by the opposing side to a controversy. Equitable estoppel focuses on the relationship between the parties and applies

where one of them has detrimentally relied upon the position taken by the other party in an earlier proceeding. In those circumstances, the party that induced reliance is estopped from subsequently arguing a contrary position. *Texaco, Inc. v. Duhe*, 274 F.3d 911, 923 n.16 (5th Cir. 2001). The Fifth Circuit has written that, to invoke equitable estoppel against a private party, a litigant must establish four traditional common-law elements:

> (1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury.

*Mangaroo v. Nelson*, 864 F. 2d 1202, 1204 (5th Cir. 1989)(*citing Moody v. United States*, 783 F. 2d 1244, 1246 (5th Cir. 1986)).

Based upon the aforementioned factors, equitable estoppel is clearly inapplicable in this case. In the court's view, the equitable estoppel doctrine's first requirement that "the party to be estopped was aware of the facts" is inapplicable, even assuming for the sake of argument that the representation in question was one of fact, rather than law. As discussed previously, counsel's representation that the statute of limitations had not run in Kentucky was accurate the first time it was made, and its repetition in subsequent briefing appears to have been the result of simple inadvertence. The court concludes that equitable estoppel's second requirement is likewise not met, since it does not appear that "the party to be estopped intended his act or omission to be acted upon." Once again, it seems clear that, in repeating the statement from his earlier briefing, counsel for Norwood was acting out of inadvertence, rather than any intent to deceive.

The third requirement of the equitable estoppel doctrine seems somewhat ambiguous in this case, since this court is not in a position to state what counsel for plaintiffs did or did not know about the running of the statute of limitations. However, the fact that plaintiffs filed suit in

Mississippi, rather than Kentucky, suggests that they were aware of the statute of limitations issues they would face in Kentucky. Relatedly, it seems quite clear that the fourth requirement, that "the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury" is not met in this case. In the court's view, no competent counsel who has access to the relevant facts and law would *reasonably* rely upon an opposing counsel's representation that the statute of limitations had not run in Kentucky, rather than confirming the truth in this regard for himself. Once again, the fact that counsel for plaintiffs chose to file suit in Mississippi rather than Kentucky suggests that they did not so rely here. The court therefore concludes that the doctrine of equitable estoppel is clearly inapplicable, based on the representation in Norwood's brief.

Perhaps recognizing the weakness of their equitable estoppel arguments with regard to the representation in Norwood's brief, plaintiffs have offered a completely new basis for a finding of equitable estoppel. In their revised briefing, plaintiffs argue, based on an affidavit from their Texas counsel, that they were misled by what they characterize as a false willingness expressed by counsel for Norwood to participate in mediation, even if the Texas suit were dismissed. Unsurprisingly, defense counsel disagrees with this characterization of his statement, asserting that he merely indicated that he would raise the issue with the insurance adjuster. Regardless of this factual discrepancy, defendants cite a number of decisions from other jurisdictions in support of their argument that "[s]ettlement discussions themselves are insufficient to invoke the doctrine, and therefore any promise to engage in settlement discussions

through mediation is likewise insufficient."[4]  This court fully agrees with this authority.

This court has no intention of attempting to mediate the parties' Texas settlement discussions after the fact, and it appears from plaintiffs' briefing that they fail to recognize how few cards they had to play in any negotiations with Norwood.  For example, plaintiffs write in their sur-rebuttal brief that:

> Had plaintiffs and the court not relied on these materially false statements of defendants' Texas counsel, then plaintiffs could have continued to litigate the case in the Texas court.  Plaintiffs could have then conducted additional discovery in that action and filed more motions.  Texas law would have allowed plaintiffs to amend their pleadings under Rule 15 to include both Norwood Trucking, Inc. and NTC.  Plaintiffs could have served Roger Shaw, who, as defendants admit, was named in the Texas suit.[5]

In the court's view, plaintiffs' arguments reflect a considerable amount of denial regarding both the legal predicament which they faced in Texas and their own responsibility for it.  In the court's view, plaintiffs' legal fate was essentially sealed on November 3, 2012, which is when Kentucky's two-year statute of limitations ran on their claims.  On that date, plaintiffs had, by their sole decision, elected to sue Norwood not in Kentucky, but in a Texas state court which

---

[4] *See, e.g., Good Luck Prod. Co. v. Crystal Cove Seafood Corp.*, 2014 U.S. Dist. LEXIS 160853, 15-16 (E.D.N.Y. Nov. 17, 2014) ("Sheer settlement negotiations, however, are insufficient to invoke equitable estoppel.") (citing cases); *Bulgartabac Holding AD v. Republic of Iraq*, 451 F. App'x 9, 11 (2d Cir. 2011) ("[m]ere '[s]ettlement negotiations' or 'allusions to future negotiations . . . are insufficient'" to establish equitable estoppel); *Smith v. Murrell*, 2004 N.C. App. LEXIS 2287 (N.C. Ct. App. Dec. 21, 2004) ("In a series of cases, this Court has held that 'requests for further negotiations or participation in settlement discussions are not conduct which would invoke the doctrine of equitable estoppel and prevent a party from relying on a statute of limitations defense.').

[5] This court is unaware of any proof that either Shaw (a truck driver who is a resident of Mississippi) or the Norwood business defendants were subject to personal jurisdiction in Texas, any more than Norwood was personally.  That being the case, the filings which plaintiffs contend they could have made in Texas strike this court as being analogous to re-arranging the deck chairs on the Titanic.

lacked personal jurisdiction over him. At this juncture, Norwood's dismissal for lack of personal jurisdiction was seemingly inevitable, and, once it occurred, plaintiffs were at the mercy of Kentucky's rules for the tolling of statutes of limitations based on the filing of a suit in another state. Unfortunately for plaintiffs, Kentucky law provided for no such tolling in this situation. Plaintiffs therefore found themselves with time-barred claims against Norwood, due to no one's fault but their own.

It is in this context that counsel for Norwood essentially threw plaintiffs a lifeline by repeating, in February 2013 briefing, his earlier representation that the Kentucky statute of limitations had not run, when it actually had by the time of the subsequent briefing. While this error strikes this court as having been clearly inadvertent, it has at least given plaintiffs "something to argue" regarding why a statute of limitations defense should not be permitted in this case, as it otherwise clearly would be. While this court's initial review of the record led it to be somewhat sympathetic to plaintiffs' argument, a closer review of the record and of the applicable jurisprudence regarding general jurisdiction leads it to believe that primary responsibility for plaintiffs' legal predicament lies with themselves and not defendants.

**Conclusion**

In light of the foregoing, it seems clear to this court that, from an equitable perspective, the litigation of the Texas case involved a substantial degree of simple, non-malicious neglect from both sides. Simply stated, plaintiffs should not have sued Norwood in Texas, and Norwood should have done a better job of briefing his motion to dismiss. The court finds that, from an

29

equitable perspective, this neglect on both sides essentially cancels each other out,[6] and, at the end of the day, the important fact is that the Texas court reached the correct legal result. Accordingly, this court finds no equitable basis for "stepping in" and preventing defendants from asserting a statute of limitations defense in this case, on the basis of what transpired in the Texas litigation. Moreover, for the reasons stated previously, it concludes that this statute of limitations defense has merit and is due to be granted.

This court does recognize, however, that its ruling today is predicated partly (but certainly not completely) upon a conclusion, based largely on its own research, that personal jurisdiction over Norwood was lacking in Texas. While the court believes this issue to be a clear one (assuming Norwood's affidavit was truthful), it does not wish for plaintiffs to feel that they have been prevented from either submitting arguments or developing facts in this regard. This court will accordingly tentatively grant the motion for summary judgment on grounds of the running of the statute of limitations, but it will hold off on issuing any formal ruling in this regard until after plaintiffs have been given an opportunity to demonstrate that personal jurisdiction over Norwood existed in Texas. Plaintiffs will also be entitled to expedited discovery on this issue, if they wish to utilize it. This court will give plaintiffs forty-five (45) days from this court's order to conduct any such discovery and/or briefing. Alternatively, plaintiffs may elect not to submit this briefing and/or discovery, in which case they should so notify this court and it will promptly issue a judgment dismissing this case on grounds of the

---

[6]If anything, it now appears that plaintiffs may have made more errors in this case than defendants. In its previous order, this court noted that its sympathy for plaintiffs' position has been reduced by the fact that their own counsel repeatedly failed to file timely briefing in this case. In a case where plaintiffs seek extraordinary equitable relief based upon errors by opposing counsel, their equitable position is harmed by their own unclean hands in this context.

running of the statute of limitations.

So ordered, this, the 25th day of September, 2015

/s/ Michael P. Mills
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI